Filed 3/21/23 P. v. Quevedo CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B300862 |
| Plaintiff and Respondent, | (Super. Ct. No. BA456662) |
| | (Los Angeles County) |
| v. | |
| | OPINION ON TRANSFER |
| JONATHAN QUEVEDO, | FROM SUPREME COURT |
| Defendant and Appellant. | |

Jonathan Quevedo appeals from the judgment entered after a jury had found him guilty on 10 counts involving four victims: three counts of assault with a deadly weapon, to wit, a cane and the base unit of a telephone (Pen. Code, § 245, subd. (a)(1));[1] two counts of willful, deliberate, and premeditated attempted murder (§§ 187, subd. (a), 189); one count of discharging a firearm at an occupied motor vehicle (§ 246); one count of dissuading a witness by use of force (§ 136.1, subd. (c)(1)); two counts of assault with a

---

[1] All statutory references are to the Penal Code.

semiautomatic firearm (§ 245, subd. (b)); and one count of possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)).

The jury found true allegations that all of the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). As to the convictions for attempted murder and shooting at an occupied motor vehicle, the jury found true allegations that appellant had personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). Except for the convictions of assault with a deadly weapon, the jury found true allegations that appellant had committed the offenses while released from custody on another felony offense (§ 12022.1).

The court found true one prior serious felony conviction (§ 667, subd. (a)(1)), three prior prison terms (§ 667.5, subd. (b)), and one prior strike within the meaning of California's "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Appellant was sentenced to prison for an aggregate determinate term of 22 years, 8 months, plus an aggregate indeterminate term of 158 years to life. The indeterminate term included two years for two prior prison terms (§ 667.5, subd. (b)). The court directed that appellant shall serve the determinate sentence prior to serving the indeterminate sentence.

In his opening brief appellant contends that, as to all of the convictions except the three convictions for assault with a deadly weapon, the evidence is insufficient to support the gang allegations. In addition, he claims that his trial counsel was ineffective because counsel failed to object to a portion of a jury instruction on eyewitness identification. Finally, appellant argues, and the Attorney General concedes, that the two one-year enhancements for prior prison terms must be stricken because of

2

an amendment to section 667.5, subdivision (b). In our original unpublished opinion filed on August 17, 2021, we struck the prior prison terms and affirmed in all other respects.[2]

Our Supreme Court granted review (S270879). It transferred the matter back to us "with directions to vacate [our] decision and reconsider the cause in light of *People v. Renteria* (2022) 13 Ca1.5th 951 [*Renteria*] and Assembly Bill No. 333 (Stats. 2021, ch. 699) [AB 333]."

We vacate our original decision. We strike the two one-year enhancements imposed for prior prison terms under section 667.5, subdivision (b). We reject appellant's contention that, based on *Renteria*, the evidence is insufficient to support the true findings on the gang enhancement allegations as to all of the convictions except the three convictions for assault with a deadly weapon. On the other hand, we accept the People's concession that the true findings on all of the gang enhancement allegations must be vacated pursuant to AB 333. We remand the matter to the trial court to afford the People an opportunity to retry the gang enhancement allegations. In all other respects, we affirm.

*Facts*

Three Counts of Assault with a Deadly Weapon

Appellant was a member of the Temple Street criminal street gang. One evening in March 2017, E.P. (husband) and his wife, V.P. (wife), were eating dinner at a restaurant within the territory claimed by the Temple Street gang. Appellant entered the restaurant and "looked at . . . husband with . . . a bad face." "He was mad-dogging [husband] . . . ." " ['M]ad-dogging['] . . . is street vernacular for staring at him to intimidate him." Husband

---

[2] We grant appellant's request for judicial notice of our original opinion.

and appellant exchanged words. "[A] verbal altercation between the two took place."

Husband and wife finished their meal and got up to leave. As they were walking toward the exit, appellant ran toward husband and tried to hit him. Wife "got in between" appellant and husband. Appellant kicked wife in the "left side" of her "inner thigh." He picked up the base unit of the restaurant's telephone and threw it at either husband or wife. The base unit hit wife in the head, causing a wound that began to bleed. Appellant was yelling, "'This is Temple Street.'"

In an apparent attempt to mollify appellant, husband said he knew "Thumper," a member of the Temple Street gang. Appellant replied, "'He ain't shit in our neighborhood.' . . . 'Fuck him.'" Appellant hit husband and wife with a cane. Appellant was yelling, "'This is Temple Street, this is Temple Street.'"

Husband and wife left the restaurant, drove away, and contacted the police. Husband told the police that the assailant had said, "'I'm from Temple Street, and I will get my homies to come through.'"

Appellant was arrested for the assault at the restaurant. Thumper told husband's and wife's relatives that husband/wife should "not . . . go to court and not . . . testify."

<u>Remaining Seven Counts Based on Shooting</u>

Husband and wife came to court for the preliminary hearing, but did not see appellant. They remained in the witness waiting room. Wife told detectives about Thumper's warning and said she was afraid to testify against appellant. The prosecutor obtained a protective order for wife and her family. Appellant, who was out on bail, was served with the protective order in open court. The preliminary hearing was continued.

4

Wife was horrified when she read the protective order served on appellant. The order stated her name, home address, and the names of her children. Wife complained to a detective, "'You just basically gave [appellant] the keys to my house.'"

Husband's and wife's son, J.P. (son), lived at his parents' home with his wife, D.V. Early one morning after the protective order had been served on appellant, son was in his car at home waiting for D.V. so he could drive her to work. It was the day before appellant was supposed to participate in a live lineup in the restaurant assault case. Son and D.V. were not aware of the assault or Thumper's warning. Husband and wife said nothing about the incident to son and D.V. because they "didn't want to spook [their] kids out."

Son was seated in the driver's seat. Appellant approached the driver's side and told son to lower his window. Son complied. Appellant said, "'You're [wife's] son; right?'" Son answered, "'Yeah.'" Appellant warned, "'You need to tell your mom that she better not show up to court.'" "'She better not show up to the fucking lineup tomorrow.'" Son said, "'Well, who are you?'" Appellant replied, "'She knows who the fuck I am. Better tell her that I'm gonna hurt you guys.'" Appellant displayed the form of a gun under his sweater. A car alarm sounded, and appellant ran "down the driveway."

D.V. entered son's vehicle. Son slowly drove away and stopped at a nearby stop sign. Appellant was waiting for him there. Son persisted in questioning appellant as to his identity. Appellant removed a gun from under his sweater and "just open[ed] fire on us." He fired six to eight times.

5

D.V. was shot three times – in the stomach, right leg, and left hand.  She had "open stomach surgery."  Son was shot twice – in the shoulder and the back of the head.

*Gang Expert's Testimony*

A gang expert testified:  "Temple Street's been around since 1923. . . .  So . . . you have multiple generations of this gang. You also have multiple generations of people who have lived in this area, who've known of Temple Street . . . .  [¶] . . . [T]hey've seen the shootings, seen the murders, they've seen the robberies . . . ." When a Temple Street gang member yells the name of his gang within hearing distance of other persons, he "not only is identifying himself with that gang, but he's also using the established reputation of that gang to intimidate people around him."

The expert noted how engendering fear in the community serves the purpose of the gang:  "[I]f you have a gang [such as Temple Street] within a community, and the residents of that community know that this gang . . . is willing to use violence or is a violent gang, it creates an atmosphere of fear within that community.  And once that [fear] takes . . . ahold of that community, . . . you have community members who are more hesitant to cooperate with law enforcement [out of concern for retaliation by the gang].  [¶]  So . . . you have victims who won't report a crime . . . ; you have witnesses  . . . who won't cooperate or won't come forward with the police.  [¶] . . . [T]hat . . . emboldens the gang."

The prosecutor presented the gang expert with a hypothetical that tracked the facts underlying the assault at the restaurant.  The expert opined that the gang member "did . . . the acts for the benefit of the gang."  The expert explained:  When the

6

gang member announced, "This is Temple Street," he was saying "he's got an entire gang behind him." The gang benefited from the member's announcement and attack on husband/wife because his actions would enhance the gang's reputation for violence and would "create[] this atmosphere of intimidation and fear within the community." "Now you have potential witnesses, and maybe even future victims, who will be hesitant to cooperate with law enforcement."

The gang member's assault "would enhance his status within the gang." Gangs "equate violence with respect. So the more violent a particular gang member . . . or a gang is, the more they're respected, and their reputation . . . is enhanced."

The prosecutor added facts to the hypothetical that tracked appellant's shooting of son and D.V. The expert opined that the shooting "was done for the benefit of the gang." The expert explained: The shooting shows "that Temple Street . . . will take the ultimate step to prevent any potential witnesses or victims from testifying in court." "Now you have an individual who has committed that ultimate act, and he's associated with this . . . gang. . . . [I]f anybody ever gets involved with Temple Street, either they're a witness or victim, they know that this gang has committed this act and it would strongly . . . dissuade anybody from cooperating with police." The shooter personally benefited because the violence of his act elevated "his level of status within the gang."

### Substantial Evidence Supports Gang Enhancements as to the Shooting

Appellant argues that the evidence is insufficient to prove the gang enhancements as to the seven counts based on his shooting of son and D.V. "In considering a challenge to the

7

sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Section 186, subdivision (b) (section 186(b)), the gang enhancement statute, "sets out what is, in effect, a two-pronged requirement: the felony must be committed (1) for the benefit of, at the direction of, or in association with a criminal street gang, and (2) with the specific intent to promote, further, or assist in any criminal conduct by gang members." (*Renteria, supra*, 13 Cal.5th at p. 964.) The prosecution must "show that defendant acted on behalf of a gang rather than [solely] for personal reasons." (*Id*. at p. 968.)

"Without more, expert testimony about the reputational benefits of crime does not support an inference that a lone gang member committed a crime for gang-related reasons — as opposed to acting from other, more personal motives." (*Renteria, supra*, 13 Cal.5th at p. 957.) "[A]ny inference that might otherwise be drawn from testimony that 'particular criminal conduct benefited a gang by enhancing its reputation for

8

viciousness' [citation] must be cabined so that section 186.22(b) prosecutions avoid punishing mere gang membership, as opposed to gang-related conduct. In a case involving a gang member who has acted alone in the commission of a felony, there must be evidence connecting testimony about any general reputational advantage that might accrue to the gang because of its members' crimes to the defendant's commission of a crime on a particular occasion for the benefit of the gang, and with the specific intent to promote criminal activities by the gang's members." (*Id.* at p. 969.) Testimony that a gang member engaged in a shooting "to maintain *his own* respect within the gang . . . fails to explain how enhancing his personal reputation within the gang would facilitate the criminal activities of the gang and its members, as section 186.22(b) requires." (*Id.* at p. 972, fn. omitted.)

Appellant asserts: "Apart from [his] gang status, . . . there was no evidence [other than the gang expert's opinion] that the shooting . . . [was] committed for the benefit of Temple Street." "Nor was there any evidence that Temple Street's status or reputation had been enhanced due to the violent nature of appellant's crimes." "At the time of the shooting, neither [son] [n]or [D.V.] knew that the suspect was a gang member charged in a gang-related case. Nor did appellant do anything to let them know. Appellant did not shout out the gang's name, or make gang symbols. . . . There was no evidence that the shooting was in Temple Street territory. Likewise, there was no evidence that appellant's status or reputation for violence increased within the Temple Street gang." "[T]here was no evidence that other gang members were involved in the shooting. . . . [A]ny person charged with a crime, not only a gang member, would benefit by violently attempting to prevent a witness from testifying by attempting to

9

murder the witness's relatives . . . ." The "facts reasonably indicate . . . that appellant acted alone." Thus, there is no "substantial evidence that appellant was committing the shooting for the benefit of Temple Street 'as opposed to acting from other, more personal motives.' (*Renteria, supra,* 13 Cal.5th at p. 957.)"

Appellant is viewing the shooting with blinders on. The shooting must be viewed together with the earlier assault on son's parents at the restaurant. When appellant committed the earlier assault, he made clear he was acting for the benefit of Temple Street. He repeatedly invoked the gang's name: "'This is Temple Street, this is Temple Street.'" At the subsequent shooting of son and D.V., there was no need for appellant to again invoke the gang's name. Any reasonable person in the community, and certainly son's parents, would understand the message of the shooting – if you bring charges against appellant or other West Temple gang members, your family will face life-threatening retribution. When son asked appellant to identify himself, appellant replied, "'She [son's mother] knows who the fuck I am.'" Appellant understood that son's mother would realize he was the gang member who had assaulted her at the restaurant.

It did not matter whether the shooting was committed in the gang's territory. The frightening message would be the same irrespective of where the shooting had occurred. Based on the gang expert's testimony, the jury could reasonably infer that the shooting would benefit the gang because it would deter the public from reporting gang crimes and from cooperating in the investigation and prosecution of such crimes. This "would facilitate the criminal activities of the gang and its members, as

10

section 186.22(b) requires." (*Renteria, supra*, 13 Cal.5th at p. 972.)

The evidence as to the gang enhancements is not insufficient because appellant acted alone during the shooting. Nor is it insufficient because the shooting personally benefited appellant by having the potential of dissuading witnesses from testifying against him in the restaurant assault case. A reasonable trier of fact could find beyond a reasonable doubt that appellant specifically intended not only to dissuade witnesses from testifying against him, but also "to promote the criminal activities of gang members" by instilling fear in the community, thus facilitating their commission of crimes with impunity. (*Renteria, supra*, 13 Cal.5th at p. 973; see *People v. Vazquez* (2009) 178 Cal.App.4th 347, 353 ["A reasonable jury could infer . . . that appellant intended for the Lopez murder to have the predicted effect of intimidating . . . neighborhood residents, thus facilitating future crimes committed by himself and his fellow gang members"]; § 186.22, subd. (g), as amended by AB 333 ["As used in this chapter, to benefit, promote, further, or assist [criminal conduct by gang members] means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include . . . intimidation or silencing of a potential current or previous witness"].)

*People's Concession that True Findings on All*
*Gang Enhancement Allegations Must Be Vacated*

"[AB] 333 amended section 186.22 to, in various respects, *increase* the evidentiary burden necessary to prove a gang-related crime enhancement." (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822.) The amendment applies retroactively to

11

cases not yet final on appeal.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1206-1207 (*Tran*).)

The People concede that the true findings on all of the gang enhancements must be reversed because "the current record does not satisfy the requirements of amended section 186.22."  (Bold omitted.)  For example, "[AB] 333 . . . 'redefines "pattern of criminal gang activity" to require that the last of the predicate [gang-related] offenses "occurred . . . within three years of the date the current offense is alleged to have been committed" . . . .' [Citation.]."  (*People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032 (*Vasquez*).)  The People note that in the present case none of the three predicate gang-related offenses occurred "within three years of the charged offenses."

"'We therefore conclude that the [gang] enhancement findings must be vacated and the matter remanded to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22.'"  (*Vasquez, supra*, 74 Cal.App.5th at p. 1033.)

*New Section 1109 Does Not Require*
*Reversal of Appellant's Convictions*

AB 333 added section 1109 to the Penal Code.  (Stats. 2021, ch. 699, § 5.)  Section 1109 "requires the trial court to bifurcate the adjudication of the underlying offense and the gang enhancement upon a defendant's request."  (*Tran, supra*, 13 Cal.5th at p. 1207.)  Appellant maintains that section 1109 applies retroactively and requires reversal of his convictions because the gang enhancements were not bifurcated.

"The question of whether section 1109 applies retroactively is the subject of a split of authority among the Courts of Appeal."  (*Tran, supra*, 13 Cal.5th at p. 1208.)  The issue is pending before

12

our Supreme Court in *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022 (S274743). We need not decide this issue because pursuant to the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, appellant has failed to show it is "reasonably probable that a result more favorable to [him] would have been reached" had the gang enhancements been bifurcated. (*Id.* at p. 836.)

We reject appellant's contention that our review is subject to the beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18. Appellant has not shown that the admission of the gang evidence rendered his trial fundamentally unfair. (See *Tran*, *supra*, 13 Cal.5th at pp. 1208-1209 [because admission of gang evidence did not render defendant's trial fundamentally unfair, Supreme Court applied *Watson* standard to claim that failure to bifurcate gang enhancements under section 1109 was reversible error].)

Our Supreme court has "held that gang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime." (*Tran*, *supra*, 13 Cal.5th at p. 1208; see *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132 ["nothing in [AB] 333 limits the introduction of gang evidence in a bifurcated proceeding where the gang evidence is relevant to the underlying charges"].) "[E]vidence related to gang membership is not insulated from the general rule that all relevant evidence is admissible if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)

Irrespective of the gang allegations, much of the gang evidence here was relevant and admissible on the issues of

13

identity, motive, and intent.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 ["Evidence of the defendant's gang affiliation . . . can help prove identity, motive, . . . specific intent, . . . or other issues pertinent to guilt of the charged crime"].)  Appellant alleges, "[D]efense counsel's primary contention was that, despite their certainty, [son and his wife, D.V.,] had wrongly identified appellant as the shooter." Appellant acknowledges, "[S]ome of the gang evidence may have been admissible as to the shooting charges to show appellant had a motive to commit these offenses."

Moreover, appellant "cannot show it is 'reasonably probable' he would have obtained a more favorable result if his trial had been bifurcated . . . because when the evidence of guilt on the relevant charges is 'overwhelming' [without the gang evidence], as it was here, it is unlikely the defendant was harmed by the format of the trial.  [Citation.]  The People presented strong evidence that [appellant] committed the charged [offenses]. . . .  Under these circumstances, we conclude that . . . bifurcation would not have helped [him]."  (*People v. E.H.* (2022) 75 Cal.App.5th 467, 480.)  Appellant in effect identified himself when, in response to son's question, "'Well, who are you,'" he replied, "'She [i.e., son's mother,] knows who the fuck I am.'" Obviously, he was the same person who had assaulted son's parents at the restaurant.  Appellant's identity as the perpetrator of this assault was not in question.

*Counsel Was Not Ineffective*

Appellant contends that trial counsel was constitutionally ineffective for not objecting to the portion of CALCRIM No. 315 providing that, "[i]n evaluating identification testimony," the jury should consider "[h]ow certain" a witness was "when he or she

14

made an identification." We refer to this portion of the instruction as "the certainty factor."

"To establish constitutionally inadequate representation, a defendant must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1057-1058.)

Counsel's representation was not deficient. An objection to the certainty factor would have been futile. Three years earlier, our state Supreme Court upheld the inclusion of the certainty factor in a similar jury instruction (CALJIC No. 2.92) on eyewitness identification. (*People v. Sanchez* (2016) 63 Cal.4th 411, 461-462.) The court noted that, in a prior opinion, "[w]e specifically approved CALJIC No. 2.92, including its certainty factor. [Citation.] We have since reiterated the propriety of including this factor. [Citation.]" (*Id*. at p. 462.) Pursuant to the principle of stare decisis, the trial court was required to follow *Sanchez.* (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) "Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.)

Even if counsel's performance had been deficient, appellant would not have been prejudiced in view of our state Supreme Court's recent decision in *People v. Lemcke* (2021) 11 Cal.5th 644, (*Lemcke*). The Supreme Court concluded that the defendant had "failed to establish that the trial court's decision to include the

15

certainty factor in CALCRIM No. 315 violated his due process rights or otherwise constituted error under the circumstances presented here." (*Id*. at p. 669.) The Supreme Court reasoned: "[W]e find nothing in CALCRIM No. 315's instruction on witness certainty that operates to 'lower the prosecution's burden of proof.' . . . [T]he instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in CALCRIM No. 315. Indeed, even [the defendant] acknowledges that, on its face, the instruction is 'superficially neutral.'"[3] (*Id*. at p. 657.)

*The One-Year Prior Prison Terms Must Be Stricken*

Appellant was sentenced in August 2019. Effective January 1, 2020, Senate Bill No. "136 amended Penal Code

---

[3] Nevertheless, the Supreme Court stated: "[W]e believe there is a risk that the current version of the instruction will prompt jurors to infer that an eyewitness's certainty in an identification is generally a reliable indicator of accuracy. Accordingly, in the exercise of our supervisory powers, we direct our trial courts to omit the certainty factor from CALCRIM No. 315 until the Judicial Council has the opportunity to consider how the language might be better worded to minimize juror confusion on this point." (*Lemcke, supra,* 11 Cal.5th at p. 669.)

section 667.5, subdivision (b) such that a one-year enhancement for a prior prison term shall be imposed only if the prior term was for a sexually violent offense." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.) "The trial court imposed [two] one-year terms under the prior version of . . . section 667.5. None of the prior prison terms was imposed for a sexually violent offense as defined by the amended version of section 667.5." (*Ibid.*) "The Attorney General concedes the merit of [appellant's] claim [that the two prior prison terms must be stricken]. [¶] The concession is well-taken." (*Ibid.*)

*Disposition*

Our original decision filed on August 17, 2021, is vacated. The two one-year enhancements imposed for prior prison terms under section 667.5, subdivision (b) are stricken. The true findings on all of the gang enhancement allegations (§ 186.22(b)) are vacated. The matter is remanded to afford the People an opportunity to retry these allegations under the law as amended by AB 333 and for resentencing as appropriate. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.                          BALTODANO, J.


17

Eleanor J. Hunter, Judge

Superior Court County of Los Angeles

_____

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Colleen M. Tiedemann, Scott A. Taryle, Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.